**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In The Matter Of The Application Of The Municipality Of Mariana & Others For An Order Under 28 U.S.C. § 1782 To Take Discovery From Margaret Beck | No. MC-23-00036-PHX-DJH<br><br>**ORDER** |

In August 2023, Applicants filed an *ex parte* application under 28 U.S.C. § 1782 to take certain discovery from Respondent Margaret Beck ("Ms. Beck") (Doc. 1) (the "Application").[1] Applicants intend to use this discovery in *Município de Mariana and Others v. BHP Group (UK) Ltd and BHP Group Limited* [2019] EWHC (TCC) HT-2022-000304 (Gr. Brit.) (the "English Litigation"), which is a lawsuit that Applicants filed in the High Court of Justice in London against non-parties BHP Group (UK) and BHP Group Limited (collectively "BHP") (Doc. 1-2 at 1–2) regarding the collapse of the Fundão Dam in Brazil. The Court granted the Application, finding that the threshold statutory requirements and discretionary factors under Section 1782[2] supported foreign discovery from Ms. Beck through her capacity as a former BHP executive (Doc. 3) (the "September 2023 Order"). Ms. Beck has since filed a Motion to Quash Subpoenas (Doc. 10).[3] Also pending before the Court is a "Motion for Leave to Intervene and to

---

[1] Ms. Beck is a resident of Tempe, Arizona.

[2] Unless where otherwise noted, all Section references are to Title 28 of the United States Code.

[3] The matter is fully briefed. Applicants filed a Response (Doc. 13) and Ms. Beck filed a

Confirm Participation in the Discovery Sought" (Doc. 16) ("Motion to Intervene") filed by BHP.[4]

The Court held a Telephonic Case Management Conference on the matters in April 2024 and (1) ordered Applicants and Ms. Beck to meet and confer on the scope of discovery sought by Applicants and file a joint notice summarizing their discussions; (2) took Ms. Beck's Motion to Quash under advisement; and (3) ordered Applicants and BHP to meet and confer on the parameters of BHP's limited intervention and file a joint notice formalizing their agreement. (Doc. 26) (the "Telephonic Conference). Upon review of the parties' briefing and joint notices (Docs. 28; 29; 30), the Court now issues its ruling on the pending motions.

**I.   Ms. Beck's Motion to Quash Subpoenas (Doc. 10)**

The September 2023 Order permitted Applicants to subpoena Ms. Beck under Section 1782 to testify by deposition and produce certain documents for use in the English Litigation. For the following reasons, the Court will deny Ms. Beck's Motion to Quash.

**A.   Background: the English Litigation**

The English Litigation arises out of the November 5, 2015, collapse of the Fundão Dam, which is a dam near Belo Horizonte, Brazil, used to store iron ore tailings, a toxic waste product of mining operations carried out by Samarco Mineração SA ("Samarco"). (Doc. 1-2 at 2). The collapse "release[ed] approximately 50 million cubic meters of iron ore wastewater generated by Samarco's mining operations[,]" "destroyed nearby villages, killed 19 people, and caused destruction along the entire length of the Rio Doce basin." (*Id*.) The BHP owns a fifty (50) percent interest in the joint venture that operates Samaraco. (*Id*. at 4).

Applicants filed an "Amended Master Particulars of Claim" against BHP in the

---

Reply (Doc. 14). The parties requested oral argument on the Motion to Quash Subpoenas. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the requests for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[4] The matter is fully briefed. Applicants filed a Response (Doc. 21) and BHP filed a Reply (Doc. 27). The parties requested oral argument on the Motion to Intervene, but have since stipulated that the Motion should be granted. *See infra* Section III.

High Court of Justice in London (Doc. 1-4).[5] Among other things, Applicants alleged that BHP "continued to increase capacity of the Fundão Dam to keep up with increases in iron ore production while ignoring physical cracks and repeated warnings that increasing the tailings capacity posed risks to safety and created the possibility of collapse." (Doc. 1-2 at 5–6). Applicants brought three causes of action under Brazilian civil law: (1) "Applicants seek to hold [BHP] strictly liable as indirect polluters within the meaning of Article 3 (IV) of the Brazilian Environmental Law"; (2) "Applicants claim fault-based liability under Article 186 of the Brazilian Civil Code"; and (3) "Applicants seek to hold [BHP] liable as 'controlling shareholders' as defined in Article 116 of the Brazilian Corporate Law." (*Id*. at 2).

Applicants represent that Ms. Beck served as the Vice President of Finance for the BHP's iron ore business from September 2013 to March 2016. (*Id*. at 5). Applicants further state that from July 2014 to April 2016, Ms. Beck "was a member of the Samarco Board [of Directors], acting as alternate director," and "attended at least four Samarco Board meetings that took place in advance of the collapse." (*Id*.) Applicants intend to depose Ms. Beck on the following topics:

    1.    Deponent's understanding and knowledge of Samarco's corporate structure and governance;

    2.    Deponent's understanding and knowledge of Samarco's business relationship with BHP, including information on Samarco's interactions with BHP related to the Fundão Dam;

    3.    Information related to BHP's and Samarco's understanding or awareness of the risks relating to the Fundão Dam, including structural changes made to the Dam between the years September 2013-March 2016;

    4.    The decisions authorized or recommended by the Samarco Board in relation to the Fundão Dam, including BHP's oversight and involvement over the same; 5. BHP's policies, decisions, and internal discussions regarding its supervision, management, funding, control

---

[5] BHP filed an "Amended Defence" (Doc. 1-5).

       of, and profits generated from, Samarco; and

6.     Deponent's preparation for this deposition

(Doc. 1-6 at 5). Additionally, Applicants served on Ms. Beck the following requests for productions ("RFPs"):

1. All Documents in Your possession concerning pay slips, W-2s, W-9s, 1099s, and other forms of compensation between and among Ms. Beck and Samarco.

2. All Documents concerning employment contracts or agreements between You and Samarco.

3. All Communications between or among You and any Samarco employee, executive, Samarco Board member, or agent of Samarco concerning BHP's relationship with Samarco, including but not limited to, BHP's supervision, management, and control over Samarco.

4. All Communications between or among You and any Samarco employee, executive, Samarco Board member, or agent of Samarco concerning Samarco's operations involving the Fundão Dam.

5. All Communications between or among You and any Samarco employee, executive, Samarco Board member, or agent of Samarco concerning Your role and responsibilities in Samarco management, operations, or daily affairs.

(*Id.* at 12).

**B.**    **Legal Standard: the *Intel* Factors**

Ms. Beck argues this Court should exercise its discretion to quash the subpoenas.[6] (*See generally* Doc. 10). When considering an application for foreign discovery under Section 1782, a court should weigh the following discretionary factors, commonly referred

---

[6] Ms. Beck does not dispute that the threshold statutory requirements under Section 1782 are met–i.e., that "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting 28 U.S.C. § 1782(a)) (citing *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)).

to as the *Intel* factors:

(1) Whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent [Section] 1782(a) aid";

(2) "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) Whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) Whether the request is "unduly intrusive or burdensome."

*Republic of Kazakhstan v. Lawler*, 2020 WL 417541, *3 (D. Ariz. Jan. 27, 2020) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004)). "The *Intel* factors involve overlapping considerations, are considered collectively by the court in exercising its discretion, and are not stand-alone categorical imperatives." *Id*. (quoting *In Matter of Application of Action & Prot. Found. Daniel Bodnar*, 2014 WL 2795832, *5 (N.D. Cal. 2014)). "[T]he decision to grant an application is made in light of the twin aims of [Section] 1782: to provide 'efficient means of assistance to participants in international litigation in our federal courts' and to encourage 'foreign countries by example to provide similar means of assistance to our courts.' " *Id*. (quoting *Pott v. Icicle Seafoods, Inc.*, 945 F. Supp. 2d 1197, 1199 (W.D. Wash. 2013)).

**C.    Discussion**

Ms. Beck argues the subpoenas are unduly intrusive and burdensome under the fourth *Intel* factor because they interfere with her privilege against self-incrimination and are otherwise irrelevant and overly broad. (Doc. 10 at 11–20). Ms. Beck further contends that, although she is not a party to the English Litigation under the first *Intel* factor, the discovery Applicants seek can be easily obtained by other, easier means because it lies within the jurisdictional reach of the English Litigation. (*Id*. at 20–22). Alternatively, Ms.

- 5 -

Beck argues the Court should narrow the requests and issue a protective order limiting the use of any information obtained pursuant to the subpoenas. (*Id*. at 22–23).

The Court will address each of Ms. Beck's arguments under the fourth and first *Intel* factors before turning to the remaining factors.

### 1. The Fourth *Intel* Factor

Ms. Beck argues the subpoenas are unduly intrusive burdensome for two reasons: (1) they interfere with her privilege against self-incrimination; and (2) they seek irrelevant information through overly broad requests. (*Id*. at 11–20).

#### a. Whether the Subpoenas Interfere with Ms. Beck's Privilege Against Self-incrimination

First, Ms. Beck contends that the subpoenas are unduly intrusive because they seek information relating to an event that is the subject of pending criminal proceedings filed against Ms. Beck and others in Brazil, which Applicants failed to mention in their Application. (*Id*. at 2). Ms. Beck represents the Brazilian Ministério Público Federal (the "Brazilian Prosecutors") brought charges arising under the Brazilian Criminal Code and the Brazilian Environmental Crimes Law against her, Samarco, and twenty-four (24) other defendants,[7] including charges for homicide, serious bodily injury, flooding causing death, and various environmental crimes (the "Brazilian Criminal Litigation"). (Doc. 10 at 4); (*see also* Doc. 10-1 at 49–137 (the Brazilian Indictment)). Ms. Beck states that she and the other BHP-affiliated defendants successfully obtained dismissal of the charges, but the Brazilian Prosecutors have appealed the lower court's decision, which remains pending. (Doc. 10 at 5).

Ms. Beck argues the Brazilian Criminal Litigation focuses on "[her] and her co-defendant's purported knowledge of certain risks associated with the Dam's operating conditions and alleged failure to act to prevent the Dam's collapse in light of that

---

[7] In total, the twenty-six (26) defendants in the Brazilian Litigation were comprised of four (4) companies and twenty-two (22) individuals—eight (8) of which were affiliated with BHP and six (6) of which, including Ms. Beck, served on the Samarco Board of Directors. (Doc. 10 at 4).

- 6 -

information," which arose in Samarco Board meetings. (*Id.*) So, Ms. Beck reasons that the Brazilian Criminal Litigation and the English Litigation are "*virtually identical in underlying fact.*" (*Id.* at 6). Ms. Beck says quashing the subpoenas "would advance [Section] 1782's express recognition that [a] person may not be compelled to give his testimony . . . or to produce a document . . . in violation of any legally applicable privilege, including the privilege against self-incrimination a privilege recognized and respected by all three nations implicated in these proceedings: Brazil, the United States, and the United Kingdom." (*Id.* at 2 (internal quotations omitted); *see also id.* at 12–17). Applicants argue Ms. Beck's assertion of privilege is improper because it lacks the requisite specificity and cannot be used to support a "wholesale vacatur of the subpoena." (Doc. 13 at 19 (citing *In re Gorsoan Ltd., 2020 WL 409729*, at *11 (S.D.N.Y. Jan. 24, 2020) (granting a motion to compel Section 1782 discovery on the basis that a "blanket assertion" of the privilege against self-incrimination, that "fail[s] to point to anything specific—whether it be a document or future question at a deposition – that might implicate them . . . is impermissible."))).

The New Mexico District Court rejected a nearly identical argument made by Ms. Beck's Counsel in *Municipality of Mariana*, 1:23-mc-00033-KWR (D.N.M. Oct. 10, 2023). There, Applicants filed an *ex parte* application under Section 1782 to take certain discovery from non-party Marcus Randolph ("Mr. Randolph") to use in the English Litigation, which the New Mexico District Court granted and issued a subpoena accordingly. *Id.* at ECF Nos. 1, 2. Attorney Henninger Bullock serves as Counsel of Record for Ms. Beck in this matter for and Mr. Randolph in *Municipality of Mariana*. Like Ms. Beck, Mr. Randolph (a) is a former BHP executive; (b) is a former Samarco Board member; and (c) faced charges in the Brazilian Criminal Litigation, which were later dismissed. *Id.* at ECF Nos. 1-1 at 3, 15 at 2–3. And, like Ms. Beck, Mr. Randolph moved to quash the subpoenas due to its purported interference with his privilege against self-incrimination under Brazilian, English, and United States law. *Id.* at ECF No. 15.

The New Mexico District Court ultimately denied Mr. Randolph's motion to quash.

*Id*. at ECF No. 28.  In so doing, the court recognized that, under Supreme Court precedent, "[a] person may assert privilege not only when production of an answer or document could support a conviction but also when it would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id*. (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).  This protection, however, "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Id*.  The New Mexico District Court was not persuaded by Mr. Randolph's "blanket assertion of privilege" because he failed to "argue that his privilege against self-incrimination applies to specific documents or specific deposition questions." *Id*.  The court further noted that Mr. Randolph's fear of incrimination was remote and speculative because the criminal charges he faced in the Brazilian Criminal Litigation were dismissed and he is not currently facing criminal charges there. *Id.* at 7.  The New Mexico District Court ultimately reasoned it is impermissible for a party to assert a Fifth Amendment right based on a blanket claim of privilege, and rejected Mr. Randolph "wholesale assertion of privilege against [Applicants'] discovery requests." *Id*. at 6.

In this matter, Ms. Beck's Counsel admitted to seeking a blanket assertion of privilege against Applicant's subpoenas at the Telephonic Hearing.  (Doc. 26).  Following suit with the New Mexico District Court, the Court finds Ms. Beck's blanket assertion is impermissible under the Fifth Amendment.[8]  Although Ms. Beck may have a cognizable fear of incrimination given that the Brazilian Prosecutors appealed the dismissal of her criminal charges, Ms. Beck has not articulated how her Fifth Amendment privilege applies to any specific deposition topic or RFP set forth in Applicants' subpoenas.  *See Hoffman*, 341 U.S. at 486.  However, that is not to say that Ms. Beck cannot assert her privilege at all.  There may be discovery requests to which Ms. Beck could properly object to under

---

[8] The New Mexico District Court was also unconvinced by (a) Mr. Randolph's arguments that the English and Brazilian Courts would also reject the discovery sought under analogous principles and (b) his invocation of *In re Petition of the Republic of Turkey for an Ord. Directing Discovery From Hamit Cicek Pursuant to 28 U.S.C. § 1782*, 2020 WL 4035499 (D.N.J. July 17, 2020). *Municipality of Mariana*, 1:23-mc-00033-KWR, ECF No. 28 at 8–10 (D.N.M. Oct. 10, 2023).  For the same reasons, this Court is unpersuaded by Ms. Beck's similar arguments.  (Doc. 10 at 12–17).

- 8 -

the Fifth Amendment. But Ms. Beck has not shown cause to quash an entire subpoena based on her blanket Fifth Amendment privilege assertion.

### b. Whether the Subpoenas are Irrelevant and Overly Broad

Second, Ms. Beck argues the subpoenas should be quashed under Federal Rule of Civil Procedure 45(d)(3). (Doc. 10 at 17–22). Rule 45(d)(3)[9] states, relevant in part, that a district court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). Ms. Beck contends that the subpoenas are burdensome because they (1) requires disclosure of materials that implicate her privilege against self-incrimination and (2) "seek to obtain years-old information and documents that have limited-to-no bearing on their underlying claims." (Doc. 10 at 18). The Court has already settled that Ms. Beck's blanket assertion of privilege is improper. *See supra* Section I.C(1)(a). The remaining issues are whether the subpoenas seek irrelevant information or set forth overly broad requests.

### i. Legal Standard

"The proper scope of discovery arising out of a [Section] 1782 application is generally determined by the Federal Rules of Civil Procedure." *In re Shenzhen Naixing Tech. Ltd. Co.*, 2023 WL 7386352, at *3 (D. Ariz. Nov. 8, 2023) (citing *Medeiros v. Int'l Game Tech.*, 2016 WL 1611591, at *3 (D. Nev. Apr. 22, 2016)). The Federal Rules of Civil Procedure strongly favor full discovery whenever possible. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is defined broadly in that matters "need not be admissible in evidence to be discoverable." *Id.* Thus, whether discoverable evidence is relevant is a low bar. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (defining relevance in the context of discovery to include "any matter that bears on, or that reasonably could

---

[9] Unless where otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

lead to other matter that could bear on, any issue that is or may be in the case"). District courts maintain wide discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Rule 45 provides several grounds for a district court to quash a subpoena, including when the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "When a party resists discovery, [it] has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Hammond v. Mgmt. & Training Corp.*, 2015 WL 402022, at *3 (E.D. Cal. Jan. 29, 2015) (citations omitted). Boilerplate objections to a request for production are insufficient. *See Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005). "Although relevance under Rule 26 is not listed as a consideration in Rule 45, 'courts have incorporated relevance as a factor when determining motions to quash a subpoena,' particularly when considering whether there is an undue burden." *Bird v. PSC Holdings I, LLC*, 2013 WL 12108107, at *1 (S.D. Cal. Nov. 20, 2013) (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)). Ms. Beck bears the burden of persuasion on her motion to quash, while Applicants must demonstrate that the discovery sought is relevant. *Strike 3 Holdings, LLC v. Doe*, 2024 WL 1643703, *2 (N.D. Cal. Apr. 15, 2024) (citing *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013)).

### ii. Relevance

As a threshold matter, the Court finds the information sought by Applicants' discovery requests are generally relevant to their claims in the English Litigation. Applicants state they seek to prove the following:

(i) the substance of the matters which gave rise to concerns in respect of the Fundão Dam's stability were raised at the meetings of the Samarco Board and were communicated to the GMC,[10] if not also the BHP Boards of Directors, and

---

[10] In the Amended Master Particulars of Claim, Applicants define "GMC" as the Group Management Committee of BHP. (Doc. 1-4 at 11).

- 10 -

        (ii)       that significant matters approved by the Samarco Board, such as the approval of expenditures incurred in connection with increased production, were known to and in fact were approved by the GMC, if not also the BHP Boards of Directors.

(Doc. 1-2 at 10–11). Applicants also represent that "Ms. Beck's knowledge would further encompass the extent to which Samarco was informed of and understood the risks relating to the Fundão Dam—and whether those risks were communicated back to BHP." (*Id*. at 11–12). Applicants believe deposing Ms. Beck on these topics will "provide [them] with clarity on what was discussed at particular Samarco Board meetings; what was reported to BHP following Samarco Board meetings; whether both BHP and Samarco were aware of risks associated with the Fundão Dam, including the Setback; and whether BHP asserted control over Samarco in relation to decisions made in face of those risks." (*Id*.)

      Ms. Beck argues that Applicants' RFPs concerning her employment on the Samarco Board has "no material link" to their claims against BHP in the English Litigation. (Doc. 10 at 19). Ms. Beck contends Applicants have no reason to seek her pay stubs and contracts from her prior employment given they disclaimed any intent to name her as a defendant in the English Litigation. (*Id*. at 19). This Court disagrees. Ms. Beck was purportedly heavily involved with BHP as former Vice President of Finance for BHP's iron ore business (Doc. 1-2 at 5), and Samarco was one of the two assets of BHP's iron ore business (Doc. 13 at 7). Ms. Beck was also involved with Samarco as a former Board member and acting alternate director. (Doc. 1-2 at 5). Applicants further represent that, in these roles, Ms. Beck attended at least four Samarco Board meetings that took place prior to the collapse of the Fundão Dam. (*Id*.) So, documents such as pay slips, W-2s, 1099s, employment contracts, and communications that were exchanged between Ms. Beck, Samarco, and BHP are relevant to adjudicating Applicants' allegations in the English Litigation because they would assist in understanding Ms. Beck's role with BHP and Samarco as well as the communications that took place relating to the collapse. The New Mexico District Court concluded similarly in light of Mr. Randolph's senior, executive roles with BHP. *Municipality of Mariana*, 1:23-mc-00033-KWR, ECF No. 28 at 12

(D.N.M. October 10, 2023).

In sum, Applicants have met their burden in demonstrating the discovery sought is relevant to the English Litigation.

### iii. Overbreadth

Because the information sought is relevant, Ms. Beck bears the burden of demonstrating with sufficient detail that the subpoena requests should not be allowed. *Strike 3 Holdings, LLC v. Doe*, 2024 WL 1643703, *2; *see also Hammond*, 2015 WL 402022, at *3. Ms. Beck argues that Applicants' request for "information and documents concerning [BHP's] relationship with Samarco and the Dam" is overbroad because it would require her to "look back and mine her personal devices for information relating to events that occurred almost a decade ago." (Doc. 10 at 18, 19). Ms. Beck further claims undue burden because her employment with BHP ended over four years ago. (*Id*. at 19). Applicants oppose, arguing Ms. Beck has not met her burden of persuasion because she has set forth no evidence demonstrating undue burden. (Doc. 13 at 28). The Court agrees with Applicants. The subpoena requests are narrowly tailored to a specific time period and are relevant and probative of Ms. Beck's connections, if any, to the collapse of the Fundão Dam through her roles at BHP and Samarco.

### 2. The First *Intel* Factor

Ms. Beck next argues the subpoenas should be quashed under the first *Intel* factor, (Doc. 10 at 20–22), which considers the following: "whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent [Section] 1782(a) aid[.]' " *Republic of Kazakhstan*, 2020 WL 417541, *3 (quoting *Intel*, 542 U.S. at 264)). The key issue in assessing the first *Intel* factor is "whether the material is obtainable through the foreign proceeding." *In re Med. Corp. Seishinkai*, 2021 WL 3514072, at *2 (N.D. Cal. Aug. 10, 2021) (citation omitted).

Ms. Beck maintains that, although she is not a party to the English Litigation,

- 12 -

Applicants can easily obtain the discovery it seeks for the English Litigation through BHP. (Doc. 10 at 20–22). Ms. Beck asserts that the documents Applicants seek all relate to her work for BHP and Samarco and thus BHP is "far more likely to have access to majority of these records than Ms. Beck would." (*Id.* at 21). Applicants disagree, arguing it is not certain that Samarco pay slips or employment records will be produced in the English Litigation, as BHP will not collect or produce any evidence arising from any BHP or Samarco representatives' cellphones. (Doc. 13 at 13). The Court sides with Applicants.

As stated in the Court's September 2023 Order, Ms. Beck no longer holds employment with BHP, will not be made a party to the English Litigation, and is located out of the High Court of Justice's jurisdictional reach. (Doc. 3 at 4). Applicants represent that BHP has recently confirmed that Ms. Beck will not be called as a witness at trial. (Doc. 13 at 14). Therefore, the Court finds the first factor favors foreign discovery. Indeed, it is clearly within this Court's discretion to "grant[] an application seeking domestic documents in the possession of a domestic party that would not be available in the foreign jurisdiction." *In re: Application of Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016). And "other courts have held that even when the requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for [Section] 1782 discovery." *Id.* (citing *In re Malev Hungarian Airlines*, 964 F.2d 97, 100–101 (2nd Cir. 1992) and *In re Bayer AG*, 146 F.3d 188, 195–96 (3d Cir. 1998)); *see also Municipality of Mariana*, 1:23-mc-00033-KWR, ECF No. 28 at 8–10 (D.N.M. October 10, 2023). This Court also declines to adopt such a requirement.

### 3. The Remaining *Intel* Factors

As to the second and third *Intel* factors—which consider the nature of the foreign tribunal; the character of the proceedings underway abroad; the receptivity of the relevant entities abroad to federal court assistance; and whether the discovery request purports to circumvent foreign proof-gathering restrictions or other relevant foreign or domestic policies—the Court finds these factors weigh in favor of foreign discovery for the same

reasons as set forth in the September 2023 Order. (*See* Doc. 3 at 5).

**D.    Conclusion**

In sum, the Court will deny Ms. Beck's Motion to Quash because she has not met her burden of persuasion under the *Intel* factors or Federal Rules of Civil Procedure. Foreign discovery shall move forward in this matter in the manner described below.

**II.    Ms. Beck and Applicants' Joint Notice Regarding the Scope of the Subpoenas (Docs. 28; 29)**

In accordance with the Court's directives at the Telephonic Conference, Applicants and Ms. Beck filed a Joint Notice (Docs. 28; 29) with respect to the following issues: (1) whether the parties can agree to the scope of the document production timeframe that starts in September 2013; and (2) whether or not Applicants can narrow their deposition topics and requests for production.[11]

First, Applicants and Ms. Beck represent they agree that the scope of the document production timeframe should be narrowed as follows:

> **Document subpoena**: Applicants will narrow the timeframe for specific employment-related document requests from September 1, 2013 to six months following the date of Ms. Beck's employment termination with BHP and/or Samarco. Applicants will narrow all other document requests relating to Samarco/BHP's operations to relate specifically to the time period when Ms. Beck was employed by BHP/Samarco (September 1, 2013 to April 30, 2016).
>
> **Deposition subpoena:** Applicants will narrow the timeframe for all matters for examination to relate specifically to the time period when Ms. Beck was employed by BHP/Samarco (September 1, 2013 to April 30, 2016), with the exception of Matter for Examination No. 6 (Deponent's preparation for the deposition).

(Docs. 28 at 2; 29 at 2). The subpoena requests shall therefore be narrowed according to

---

[11] The parties also met and conferred on whether they could agree to a timeline for Ms. Beck to propose a draft protective order to Applicants. (Docs. 28 at 4; 29 at 4). Ms. Beck agreed to propose a draft protective order to Applicants by April 26, 2024 (Docs. 28 at 4; 29 at 4), which she timely filed (Doc 34-1).

these terms.

Second, Applicants agree to narrow the substantive scope of the deposition topics and RFPs as follows:

> **Document subpoena:** Applicants will narrow Document Request No. 2 to request only specific documents—specifically, employment contracts or agreements and any related correspondence from the narrowed time period.
>
> **Deposition subpoena:** Applicants will narrow Matter for Examination No. 2, relating to Deponent's understanding and knowledge of Samarco's business relationship with BHP. Rather than referencing "BHP's interactions with Samarco's activities," the revised Matter will specify that the information subject to questioning will include "BHP's supervision, management and control over Samarco in connection with Samarco's activities related to the Fundão Dam."

(Docs. 28 at 3; 29 at 3). Ms. Beck does not object to the scope of Applicants' newly proposed RFP. (Docs. 28 at 3–4; 29 at 3–4). However, Ms. Beck argues Applicants' revisions to their deposition topics are insufficient to avoid implicating her right against self-incrimination, and she "anticipates objecting to most questions raised by Applicants' counsel should Ms. Beck sit for any deposition." (Docs. 28 at 3–4; 29 at 3–4).

As explained *supra*, Ms. Beck is precluded from making a blanket assertion of privilege under the Fifth Amendment, but may make her objections at the appropriate time with the requisite specificity. *See supra* Section at I.C(1)(a). The subpoena requests shall be narrowed according to Applicant's proposed revisions. (Docs. 28 at 3; 29 at 3).

**III.    BHP's Motion to Intervene (Doc. 16)**

Having determined that Ms. Beck's Motion to Quash Subpoenas should be denied and that discovery should proceed according to Applicants' narrowed RFPs and deposition topics, the Court finally turns to BHP's Motion to Intervene. BHP argues that, because it is the named defendant to the English Litigation, it is entitled to intervene both as a matter

of right under Rule 24(a)[12] and permissively under Rule 24(b).[13] (Doc. 16 at 5–8). Should the Court deny Ms. Beck's Motion to Quash, BHP further moves the Court for an Order confirming BHP's participation in the discovery sought. (*Id*. at 10-14). Applicants do not oppose BHP's participation in this action and involvement in discovery so long as BHP's involvement is limited. (Doc. 21).

In accordance with the Court's directives at the Telephonic Conference, Applicants and BHP filed a Joint Notice (Doc. 30) indicating they agree that BHP's Motion to Intervene should be granted, and have stipulated to the extent that BHP should be involved in discovery. Upon review of the parties' agreed upon terms (Doc. 30-1), the Court will adopt the parties' stipulations and name BHP as an Intervenor in this action.

Accordingly,

**IT IS ORDERED** that Ms. Beck's Motion to Quash Subpoenas (Doc. 10) is **DENIED**. Discovery shall move forward in this matter as stated herein.

**IT IS FURTHER ORDERED** that Applicants shall modify their subpoena requests, as appropriate, to conform with this Order.

**IT IS FINALLY ORDERED** that BHP's "Motion for Leave to Intervene and to Confirm Participation in the Discovery Sought" (Doc. 16) is **GRANTED**. Applicants, Ms. Beck, and BHP shall participate in discovery as follows:

1. BHP is permitted to participate in any discovery that may be ordered here, including through:

    (a) attendance and participation at any deposition, and thus the ability to meet and confer with Applicants on a proposed allocation of time, seeking further guidance from the Court if the parties are unable to agree;

---

[12] Rule 24(a) requires a court to permit anyone to intervene who "(1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

[13] Rule 24(b) provides a court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

    (b)    review of any documents Ms. Beck may produce in this matter; and

    (c)    the ability to negotiate a Protective Order and apply to this Court, as necessary, to protect confidential or privileged BHP information contained therein.

The Court will, however, implement the following requirements relating to BHP's participation as requested by Applicants.

2.    Applicants, Ms. Beck, and BHP shall take the following steps to advance the proceedings and production of any discovery that may be ordered:

    (a)    **No later than May 14, 2024,** Applicants and BHP shall exchange written comments on Ms. Beck's proposed protective order (Doc. 34-1);

    (b)    **Within seven (7)** days following completion of (a) above, BHP and all existing Parties shall meet and confer via telephone to discuss any points of disagreement; and

    (c)    **Within seven (7)** days following completion of (b) above, BHP and all existing Parties shall submit a joint status letter to this Court setting forth the outcome of their meet-and-confer, any agreement arising from the exchange of proposals, and any remaining disagreements relating to the proposals.

3.    Because the Court denied Ms. Beck's Motion to Quash and BHP seeks to invoke any joint defense privilege or protection with respect to either Respondent Beck's document production or deposition, BHP is instructed to produce any written joint defense agreements between it and Respondent **no later than May 21, 2024**. If BHP asserts that there is no written joint defense agreement between it and Respondent, and instead asserts that its claimed privilege or protection arises from an unwritten agreement or another source, BHP will provide the following information regarding any such agreement or source:

    (a)    a detailed description of the agreement or source giving rise to the joint defense privilege or protection;

    (b)    whether any aspect of the agreement or source has been reduced to

writing at any point;

(c)  all parties to any agreement;

(d)  the date any agreement was entered into;

(e)  a description of the common interest shared by the parties to any agreement; and

(f)  the date of expiration (if any) of any agreement.

Dated this 7th day of May, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge